# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFFREY J. SHEPHERD,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-199
(Dlott, J; Hogan, M.J.)

## REPORT AND RECOMMENDATIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition. (Doc. 18) and Plaintiff's Reply Memorandum. (Doc. 21).

## PROCEDURAL HISTORY

Plaintiff, Jeffrey J. Shepherd, was born on July 11, 1966 and was 42 years old at the time of the administrative law judge's (ALJ) decision. Plaintiff earned a General Equivalency Diploma ("GED") and has past work experience as a front end loader and chainsaw operator at a logging company.

Plaintiff filed an application for SSI on August 16, 2005, alleging disability since June 1, 2001 (Tr. 43-45), due to due to depression, anxiety, high blood pressure, stomach trouble, two hernias (Tr. 49), alcoholism and a seizure disorder. (Tr. 101). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 31-37). Plaintiff requested and was granted a de novo hearing before an ALJ. On June 19, 2007, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Larry A. Temin. (Tr. 1076-1102). A medical

expert, Greg Taliaferro, Ph.D. (ME) and a vocational expert Janice L. Bending, Ph.D. (VE), also appeared and testified at the hearing. (Tr. 1102-25).

On September 23, 2008, the ALJ issued a decision denying Plaintiff's SSI application. The ALJ determined that Plaintiff suffers from the severe impairments of affective disorder, anxiety disorder, alcohol dependence, and degenerative lumbar disc disease, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 16, 20). According to the ALJ,

> Based on all his impairments, *including alcohol dependence,* the claimant has the following residual functional capacity: Physically, he is able to lift/carry up to 50 lbs. occasionally, 25 lbs. frequently and can stand and/or walk a total of six hours in an eight hour workday; he can only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; he should never climb ladders, ropes, or scaffolds or work at unprotected heights or around hazardous machinery. Mentally, he is able to perform only simple routine, repetitive tasks and can remember and carry out only short and simple instructions; he cannot interact with the general public and cannot interact with coworkers or supervisors more than occasionally; he is able to make only simple work-related decisions, and his job should not require more than ordinary and routine changes in work setting or duties. Nevertheless, because he is abusing alcohol, the claimant will also be absent from the workplace at least three days every month.
>
> When the claimant is not abusing alcohol, he has the same exertional and nonexertional limitations set forth in the aforementioned residual functional capacity, except that because he is not drinking, he will *not* be absent from the workplace at least three days per month.

(Tr. 21). The ALJ also determined that while Plaintiff was unable to perform his past relevant work (Tr. 24). *When he is not abusing alcohol,* he retains the capacity to perform other work that exists in significant numbers in the national economy, including jobs as a dining room attendant/buser, production worker (at both the medium and light exertional levels), and as an inspector. (Tr. 25). Consequently, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 26). The Appeals Council denied plaintiff's request for review (Tr. 6-7A), making the decision of the ALJ the final administrative decision of the Commissioner.

2

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearing that he is disabled due to depression and anxiety. He testified that 80 - 90% of his medications cause dizziness and drowsiness. When he was drinking, he would not take his medications. He stopped drinking in May 2007. Plaintiff testified that his energy level and self-esteem is low. He has problems with memory and concentration. He had no recent thoughts of suicide. Plaintiff testified that he was better when he was taking his medications and not drinking. Plaintiff did not think he could work due to lack of concentration, coping skills and poor judgment.

Plaintiff testified that he drove an automobile, spent time with AA friends, watched televison, read, shopped, did a little cooking, occasionally fished and did laundry. Plaintiff testified that he did not believe his alcohol affected his ability to work. However, he admitted that when he drank, he would miss one day a week, which ended up affecting his job performance, and that he did get reprimanded for his performance because he was drinking on the job. Plaintiff testified that he had work problems even when he was sober and did not like being around people. He has not tried to look for a job since being sober. Plaintiff testified that he could not work because he could not cope with getting up every morning and going to work. (Tr. 1076-1101).

## MEDICAL OPINIONS

The parties have provided informative and detailed descriptions of the pertinent medical records in their briefs. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. A general identification of the medical sources upon whom the parties rely will help frame further review. Plaintiff received mental health treatment at Mental Health & Recovery Center of Clinton County (MHRC) from February, 1999 through at least August, 2008. (Tr. 251-306, 324-387, 730- 831, 948-1051).

From July 2000 to May 2007, the record reveals 23 instances in which Plaintiff presented to the emergency room or was admitted to various hospitals for continuous alcohol dependency and related detoxification sessions (Tr. 118-29, 130-32, 582-83, 615-16, 623-24, 922-27, 928-34,

3

935-41, 942-44); suicide ideation (Tr. 102-07); alcohol induced suicide ideation (Tr. 110-11, 133-38, 139-42, 157-62, 220-27/635-39 (same visit), 228-35, 607-09, 628-29, 630-32, 675-85, 898-900); anxiety attacks (Tr. 886-89); alcohol induced seizures (Tr. 211-13); substance-induced mood disorder, depressed type, and substance-induced anxiety disorder. (Tr. 686-97, 898-911).

Treating psychiatrist at MHRC, Cory Pelnick, M.D, began seeing Plaintiff in 1999. (Tr. 504). In October 2003, Dr. Pelnick noted that Plaintiff's anxiety was well-controlled, and that Plaintiff had continued to work and had been sober for over one year. (Tr. 766). When Plaintiff returned in January 2004, Dr. Pelnick reported that Plaintiff's anxiety was well-controlled and he had maintained sobriety despite the stress of his father's stroke. (Tr. 761). In May 2004, Plaintiff's anxiety medication was adjusted following an alcohol relapse. (Tr. 750). In September 2004, Plaintiff reported that he was "doing okay for now," but was reported drinking 6-12 beers a day. Dr. Pelnick noted Plaintiff was "stable, although not ETOH." His mood/anxiety symptoms were noted to be controlled. (Tr. 743). In February 2005, Dr. Pelnick noted that Plaintiff was clean and sober, his anxiety was well-controlled and he was doing well overall. (Tr. 731). In April 2005, Dr. Pelnick noted that Plaintiff was doing very well and had been sober for 5 months. (Tr. 730). In January 2006, Plaintiff saw Dr. Pelnick and his sleep was solid; his mood was euthymic. (Tr. 300).

In April 2007, Dr. Pelnick completed a questionnaire wherein he diagnosed Plaintiff with major depression, severe, recurrent with psychotic features, alcohol dependence, mostly in remission, and paranoid personality traits. Dr. Pelnick assigned Plaintiff a current Global Assessment of Functioning ("GAF") score of 45, and a highest GAF score of 55. Dr. Pelnick noted that Plaintiff suffers from anhedonia, decreased energy, thoughts of suicide, blunt, flat or inappropriate affect, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, psychomotor agitation or retardation, paranoid thinking or inappropriate suspiciousness, emotional withdrawal or isolation, pathologically inappropriate suspiciousness or hostility, perceptual or thinking disturbances, hallucinations or delusions – paranoia, deeply ingrained, maladaptive patterns of behavior, memory impairment – short, intermediate or long term, sleep disturbance, and oddities of thought, perception, speech or behavior. Dr. Pelnick opined that Plaintiff would be unable to understand, carry out, and

remember very short and simple instructions, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in a routine work setting. Dr. Pelnick further reported that Plaintiff cannot work in coordination with or proximity to others without being unduly distracted, complete a normal workday or workweek without interruptions from psychologically based symptoms or deal with normal work stress. Dr. Penick also opined that Plaintiff is seriously limited in maintaining attention for a two hour segment, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. Dr. Pelnick found that Plaintiff has marked difficulties in maintaining social functioning, marked deficiencies of concentration, persistence, or pace, and that Plaintiff had experienced three repeated episodes of decompensation within a 12 month period. Each of those episodes lasted at least two weeks. Dr. Pelnick concluded that Plaintiff's impairments or treatment would cause him to be absent from work for more than four days per month on average. (Tr. 503-07).

In August 2008, Dr. Pelnick noted that Plaintiff had a very significant history of alcohol dependence, and in more recent years, alcohol abuse. Dr. Pelnick reported that Plaintiff's alcohol use had been limited to binges of usually days to a few weeks in duration and that, at most, these relapses have been several times per year, with the last one in early 2007. Dr. Pelnick reported that Plaintiff had been sober since then. Dr. Pelnick reported that Plaintiff's relapses have always followed the same basic pattern: stressors become overwhelming and at a some point he starts drinking and stops taking his medications, despite warnings to avoid alcohol while on medications. Plaintiff then checks himself into a hospital for a short "rehab" and is subsequently discharged and then remains sober for an extended period of time. Dr. Pelnick reported that other than these short periods, Plaintiff is generally very reliable in both taking his medications and in going to appointments. Dr. Pelnick opined that Plaintiff remains generally stable psychiatrically for extended periods of time, but that his judgment and coping skills remain limited. Dr. Pelnick opined that Plaintiff's limitations remained the same despite abstinence from alcohol and compliance with treatment. (Tr. 946).

Jennifer Scott, Psy.D., a clinical psychologist, evaluated Plaintiff on October 29, 2005. Plaintiff reported he was disabled due to anxiety and depression. He stated he had a fear of people and places and that he mostly stayed at home. Dr. Scott observed that Plaintiff's conversation was somewhat slowed, but was adequately organized and easily followed. Plaintiff appeared anxious and depressed. He denied having any harmful ideations, delusions or hallucinations. Dr. Scott noted that Plaintiff displayed psychomotor retardation, limited energy, low frustration tolerance, hopelessness, and helplessness that often accompanies depression. According to Dr. Scott, Plaintiff appeared to have borderline to low average intelligence. Dr. Scott diagnosed Plaintiff with major depressive disorder, single episode, severe without psychotic features, generalized anxiety disorder, and alcohol dependence, in early partial remission. She assigned Plaintiff a GAF score of 45. Dr. Scott found that Plaintiff was moderately impaired in relating to others and in understanding, remembering, and following simple instructions, but severely impaired in his ability to maintain attention, concentration, persistence, and pace and the ability to withstand the stress and pressure of day-to-day work activities. Dr. Scott concluded that Plaintiff's substance abuse appeared secondary to his emotional difficulties. (Tr. 168-73).

A mental residual functional capacity assessment was done by Patricia Semmelman, Ph.D, in December 2005. Dr. Semmelman, found that Plaintiff had mild limitations in activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, or pace, and one to two episodes of decompensation. Dr. Semmelman noted that Plaintiff's main problem has been his drinking. Dr. Semmelman concluded that Plaintiff retains the ability to perform simple tasks in a relatively stable environment where he has limited contact with others. (Tr. 179-96).

6

## MEDICAL EXPERT TESTIMONY

The ME, Dr. Taliaferro, a clinical psychologist, testified at the administrative hearing that Plaintiff's depression did not met or equal listing 12.04. According to Dr. Taliaferro, there is a complex relationship between mental health and alcohol use, where some people drink and then become depressed, while some people are depressed and then drink, but that when one drinks, one is likely to become more depressed. Dr. Taliaferro testified that he could not say for sure what Plaintiff's relationship was between alcohol and depression. Dr. Taliaferro testified that Plaintiff did better when he was not drinking and compliant with his medications. Dr. Taliaferro testified that Plaintiff had no more than mild limitations in daily activities, moderate limitations in social functioning, and moderate limitations in attention and concentration. Dr. Taliaferro also testified that based on Plaintiff's testimony, his functioning would be moderate to severe. Dr. Taliaferro opined that while Plaintiff may be impaired, he is not impaired to the degree he alleges. Dr. Taliaferro also noted that substance abuse could interfere with concentration and attention. (Tr. 1102-15).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

7

establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 416.920. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 416.925(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 416.920(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. §416.927(d)(2). If the ALJ finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009); *Wilson*, 378 F.3d at 544. In this regard, the ALJ is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §416.927(d)(2),(4).

A mental impairment may constitute a disability within the meaning of the Act. *See 42*

9

U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon* v. *Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. § 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R. § 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 416.920a(c)(3); *see Hogg* v. *Sullivan,* 987 F.2d 328,332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 416.920(c)-(f),416.920a(c).

To determine whether a claimant's drug or alcohol addiction is a contributing factor material to the Commissioner's finding of disability, the Regulations essentially require the ALJ to perform a three part analysis. First, the ALJ must determine whether the claimant is disabled, taking into account the "gross" total of claimant's limitations, including the effects of any substance use disorders. *Williams v. Barnhart,* 338 F. Supp.2d 849, 863 (W.D. Tenn. 2004)(citing *Brueggemann v. Barnhart,* 348 F.3d 689, 693-95 (8th Cir. 2003)). Second, that ALJ must make a determination that drug or alcohol use is a concern. *Id.* Third, the ALJ must determine, based on substantial evidence, what limitations would remain in the absence of claimant's alcoholism or drug addiction, and whether, based on those "net" limitations which do not encompass any limitations attributable to alcohol or drug use, plaintiff is disabled under the five step sequential evaluation process. *Id.* If the remaining or "net" limitations would be disabling, the drug abuse and alcoholism is not material, and the individual is disabled; if the remaining limitations would not be disabling, the drug abuse and alcoholism is material and the individual is not disabled within the meaning of the Act. 20 C.F.R. §416.935(b)(2)(I)-(ii).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

11

Benefits may be immediately awarded only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

Plaintiff contends that the ALJ erred by relying on the opinions of the ME, Dr. Taliaferro and further erred by substituting his own judgment that Plaintiff, even with alcohol use, did not meet or equal one of the listed impairments (Tr. 20), in place of the assessments of treating psychiatrist, Dr. Pelnick and the examining psychologist, Dr. Scott. Plaintiff emphasizes that based on Dr. Pelnick's and Dr. Scott's assessments, Plaintiff met the requisite level limitations set forth in Listing 12.04 and 12.06. Plaintiff further contends that if the ALJ had properly evaluated Plaintiff's mental impairments, as determined by Dr. Pelnick and Dr. Scott, it would have led to the conclusion that Plaintiff's conditions satisfied Listing 12.04 for affective disorders and Listing 12.06 for anxiety-related disorders.

To satisfy his burden at Step 3, Plaintiff must show that his impairments meet all of the criteria in Listing 12.04 or 12.06. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. Similarly, to show that he equals a listed impairment, Plaintiff must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531. It is not enough for Plaintiff to show that the overall functional impact of his impairment is as severe as that of an impairment in the Listings. *See Zebley*, 493 U.S. at 351.

Given the potentially dispositive nature of the Listings, Plaintiff had much to prove at Step 3. The Supreme Court explains:

12

> The Secretary [now, the Commissioner] has set the medical criteria defining the listed impairments at a higher level than the statutory standard. The listings define impairments that would prevent an adult regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'... The reason for this difference between the listings' level of severity and the statutory standard is that ... the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Zebley*, 493 U.S. at 532 (internal citations omitted).

The ALJ considered all of the evidence of record and reasonably determined that Plaintiff had an affective disorder and anxiety disorder and reasonably determined that Plaintiff had a very long history of alcohol dependence. (Tr. 16-20). In making these determinations, contrary to Plaintiff's contentions, the ALJ did not err in reasonably relying on Dr. Taliaferro's testimony. (Tr. 20, 1102-15). Dr. Taliaferro reviewed Plaintiff's medical record and found that he had no more than mild to moderate limitations in functioning under the B criteria. (Tr. 1103-05). Significantly, even though Plaintiff argues that Dr. Pelnick's opinions, along with the treatment record, contain findings that Plaintiff meets or equals Listings 12.04 or 12.06, he has not shown that the evidence the ALJ relies on to determine that he does not met or equal Listings 12.04 or 12.06 does not constitute substantial evidence. If substantial evidence supports the ALJ's decision, it must be affirmed even if this Court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir.1994).

As discussed above, the ALJ recognized that Plaintiff's affective disorder, anxiety disorder, alcohol dependence, and degenerative lumbar disc disease were severe impairments that limited his ability to work. (Tr. 16-20). Merely because Plaintiff was diagnosed with mental conditions, did not necessitate a finding of disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *see also Young v. Secretary of HHS*, 925 F.2d 146, 151 (6th Cir. 1990)("a claimant must do more to establish a disabling mental impairment than merely show the presence of a

13

dysthymic disorder."); *Kennedy v. Astrue*, 247 Fed.Appx. 761, 767 (6th Cir. 2007)("mere diagnosis of obesity does not establish either the condition's severity or its effect on [the claimant's] functional limitations.").

Plaintiff met part A of Listings 12.04 and 12.06 because the evidence showed he had an affective disorder and anxiety disorder. However, Plaintiff did not satisfy the B criteria of either Listing 12.04 or 12.06. To satisfy the B requirements of Listings 12.04 and 12.06, Plaintiff had to establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* Listing §§12.04B and 12.06B, 20 C.F.R. Part 404, Subpart P., Appendix 1.

The ALJ reasonably found that Plaintiff did not satisfy the B or C criteria of Listings 12.04 and 12.06. (Tr. 20-21). The ALJ determined,

> Based on Dr. Taliaferro's testimony, he appears to have "moderate" difficulty maintaining concentration, persistence, or pace when he is not drinking; however, he has "marked" difficulty maintaining concentration, persistence, or pace when he is abusing alcohol. There have been no episodes of decompensation during periods of sustained sobriety; however, there were two decompensations of extended duration in February and July of 2006 while he was abusing alcohol. (citation to record omitted).
>
> Because the claimant's mental impairments, including the substance use disorder, do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the paragraph B criteria are not satisfied. The paragraph C criteria are not met because, even with substance use considered, the claimant has not demonstrated the repeated episodes of decompensation, marginal adjustment, or inability to live independently required by paragraph C of 12.04; and paragraph C of 12.06 is not satisfied because the claimant has shown. that he is able to function outside the area of his home.

(Tr. 20-21). Further, state agency reviewing psychologists, Drs. Semmelman and Chambly opined that Plaintiff was only mildly to moderately impaired and did not meet either the B or C criteria. (Tr. 183-94). *See* 20 C.F.R. § 416.927(f)(2)(I) "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given

14

significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Substantial evidence therefore supports the ALJ's finding that Plaintiff mental impairments did not meet or equal Listings 12.04 and 12.06.

Plaintiff also argues that the ALJ's finding that alcohol was a contributing factor, material to the determination of disability is not supported by substantial evidence. According to Plaintiff, the ALJ also misapplied the law in making this finding. Contrary to Plaintiff's contentions, this conclusion was not contrary to law because Congress has excluded many, if not most, drug-addicted individuals from the Social Security Act's definition of a "disability." The statutory exclusion mandates:

> An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. §423(d)(2)(C). After Congress amended the Social Security Act in this manner, the Commissioner followed suit by adopting a Regulation addressing the drug-addiction exclusion statute. This administrative activity was consistent with the Social Security Act, through which Congress has granted the Commissioner "full power and authority to make rules and regulations to establish procedures, not inconsistent with [the Social Security Act]..." 42 U.S.C. §405(a).

The specific Regulation addressing the statutory drug-addiction exclusion explains:

> The key factor in determining whether drug addiction ... is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs...
>
> In making this determination we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. §416.935(b)(1)-(2).

15

In the present case, the ALJ applied the legal standards as set forth in the statutory drug-addiction exclusion, 42 U.S.C. §423(c)(2)(D), and in its accompanying Regulation, 20 C.F.R. §416.935. (Tr. 25). The ALJ found that when Plaintiff was not drinking, he was able to perform work with simple routine, repetitive tasks, and that he could remember and carry out short and simple instructions, where he did not have to interact with the general public, or interact more than occasionally with co-workers and supervisors, and that he could make simple work-related decisions, with no more than ordinary and routine changes in work setting or duties. (Tr. 21). On this issue, the Court finds that ALJ did not err in the procedure used to determine whether Plaintiff's alcohol use is a contributing factor material to a finding of disability. The ALJ determined that Plaintiff's alcohol use is a concern, based on the medical records replete with evidence of alcohol abuse, suicide attempts, multiple hospitalizations for inpatient mental health treatment, and the opinions of the ME and reviewing mental health sources. The ALJ further properly determined, based on substantial evidence in the record, what mental limitations would remain in the absence of Plaintiff's alcohol abuse. *See* Tr. 21.

Plaintiff next contends the ALJ erred by rejecting the disability opinion of his long term treating psychiatrist, Dr. Pelnick, which opinion was supported by the opinions of Dr. Scott.

Plaintiff has not demonstrated that the ALJ applied incorrect standards of law when evaluating the medical source opinions. He contends, however, that the ALJ's decision is not supported by substantial evidence because the opinions of treating psychiatrist, Dr. Pelnick, and examining psychologist, Dr. Scott, support a disability finding and are contrary to the restrictions established by the ALJ's assessment of his residual functional capacity.

The ALJ correctly described the legal standards applicable under the treating physician rule. 20 C.F.R. §416.927(d) and (f). *See* Tr. 21. The ALJ then applied the correct legal criteria to Dr. Pelnick's opinions, finding that "Dr. Pelnick's assertion that the claimant has exactly the same disabling limitations when he is sober and compliant in taking his medications is rejected because it is totally contradicted by his actual treatment notes." (Tr. 23). (citation to record omitted). Dr. Pelnick's treatment notes reveal that when Plaintiff was taking his medications, his mood was euthymic, his sleep was solid, his anxiety was well-controlled, his affect was reactive, calm, or full range, and his thoughts were logical or clear. (Tr. 300, 730, 731, 743, 761). The

16

ALJ further gave Dr. Pelnick's opinion "little weight insofar is it is alleged to represent the claimant's functioning when he is not abusing alcohol and is compliant with his medications." (Tr. 24). To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *See Walters,* 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2).

Plaintiff argues that the opinions of the psychological consultative examiner, Dr. Scott, supported the opinion of Dr. Pelnick. As noted above, Dr. Scott indicated that Plaintiff was moderately impaired in relating to others and in understanding, remembering, and following simple instruction; severely impaired in his ability to maintain attention, concentration, persistence, and pace and in the ability to withstand the stress and pressure of day-to-day work activities. Dr. Scott opined that Plaintiff's substance abuse appeared secondary to his emotional difficulties. (Tr. 168-73). The ALJ found that Dr. Scott's assessment was inconsistent with the opinion of Dr. Semmelman, who based her opinion on Dr. Scott's psychological evaluation. (Tr. 22, 181) and the third-party report of Plaintiff's father, who noted that Plaintiff was able to shop for two hours at a time, socialize daily, attended church, and had no memory problems. *See* Tr. 77-84. Dr. Scott's opinion also was inconsistent with Plaintiff's reported activities of driving alone, spending time with AA friends, watching television, reading, shopping, cooking and doing laundry. (Tr. 67-69, 79-82, 85-92, 1089-1090).

Because the ALJ applied the correct legal criteria to his evaluation of the medical source opinions of record, and because substantial evidence supported his evaluation of these opinions, the ALJ reasonably concluded that Plaintiff would not be disabled if he stopped the alcohol use. Although Plaintiff certainly disagrees with the ALJ's weighing of the evidence, the ALJ's decision was within the zone of reasonable choices. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence... presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts.").

**IT IS THEREFORE RECOMMENDED THAT**:

Because substantial evidence supports the decision of the ALJ, the decision of the ALJ should be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date: 9/21/10

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).